SHARPLES et al. v. MOSELEY & STODDARD MANUF'G CO. et al.

(Circuit Court of Appeals, Second Circuit.   May 26, 1897.)

1. PATENTS—VALIDITY AND INFRINGEMENT—CENTRIFUGAL MILK SEPARATORS.
   The Sharples reissue, No. 11,311 (original No. 442,461), for a centrifugal milk-separating machine, of which the distinguishing features are the simultaneous driving of the vessel and heating of the milk by a jet of steam or other similar motive power applied directly to the vessel, without the use of a driving spindle, held valid as to claims 4 and 5; and said claims held to be infringed by a rotary "milk tester," in which these distinctive features are used.   75 Fed. 595, affirmed.

2. SAME.
   The Sharples patent, No. 458,194, for a rotary milk-testing apparatus, construed as to claim 3, of which the distinctive feature is an annular casing fixed to the frame outside the pockets, against which the jet of steam is delivered, and which aids in concentrating the steam about the bottles; and said claim held not infringed by a machine made in accordance with the Stoddard patent, No. 484,685.   75 Fed. 595, reversed.

Appeal from the Circuit Court of the United States for the District of Vermont.

The complainants, Philip M. Sharples and David T. Sharples, brought before said court their bill in equity, which was based upon the alleged infringement by the defendants of claims 1, 4, and 5 of reissued letters patent No. 11,311, dated February 28, 1893, issued to the complainants, and of claim 3 of letters patent No. 458,194, dated August 25, 1891, issued to David T. Sharples. The reissue relates to the class of centrifugal machines known as "milk separators," which separate the cream from the blue milk. The other patent is for a centrifugal milk-testing apparatus, which, after the milk is heated with acid in accordance with a process given to the public in 1890 by Dr. S. M. Babcock of Wisconsin, separated the butter fat from the rest of the milk, whereby the value of the milk for the manufacture of butter is ascertained. The circuit court decreed that the defendants should be enjoined against their infringement of claims 4 and 5 of the reissued patent and of claim 3 of patent No. 458,194. 75 Fed. 595. From this decree the defendants appealed.

Charles Howson, for complainants.

E. B. Stocking, for defendants.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. Centrifugal milk separators were, on December 8, 1890, the date of the original Sharples patent, well known. The patented improvement consisted in dispensing with a driving spindle, in requiring only the balancing of the vessel, which was effected by suspending it in a casing upon a fixed bearing, and in applying the motive power directly against the outer wall of the vessel, whereby an increased heat was imparted to the heavier part of the milk, which assisted in hastening the separation of the cream without materially heating the latter. The jets, as of steam, were directed by nozzles against wings or buckets projecting from the periphery of the vessel, and the bearing was placed substantially in the perpendicular line which passed through the center of gravity of the loaded vessel. The simultaneous driving of the vessel and heating of the milk by the agency of steam, or a similar motive power applied directly to the vessel, were the distinctive features of the improvement; and, so far as the record shows, the patentees were the first to cause a centrifugal milk-separating vessel, suspended in a casing upon a fixed bearing, to be whirled directly by a jet, as of steam, a driving spindle being dispensed with, and the balancing of the vessel only being required, and to drive and heat this separator by the same jet applied at the outer wall of the vessel. Claims 4 and 5 of the reissue are as follows:

"(4) In a centrifugal machine, a separator vessel, suspended upon a fixed bearing, located substantially in the perpendicular passing through the center of gravity of the loaded vessel, in combination with means for applying rotating power directly to said vessel, substantially as set forth. (5) In a centrifugal machine, a rotary separator vessel pivotally suspended, substantially as described, in combination with a nozzle or nozzles located at the periphery of the vessel, and adapted to apply a jet, as of steam, thereto, whereby said vessel is directly rotated, and the jet utilized to affect the temperature of the rotating liquid, substantially as and for the purpose set forth."

Claim 4 is identical with claim 3 of the original patent. Claim 5 differs from claim 4 of the original only in this respect: it substitutes "and the jet utilized to affect the temperature of the rotating liquid" for the words "and the heat of the jet utilized," and it is suggested that the substitution was intended to permit the use of such a motive

power as would cause the rotating liquid to be cooled equally. Such a construction of the claim is not permissible. It means what the original fourth claim meant. The defendants' machine is what is known as a "milk tester"; that is, instead of a single vessel, which is rotated for the purpose of separating the cream from the milk, it consists of a series of small bottles containing milk and acid, and which are rotated for the purpose of separating the butter fat from the residue of the milk. The two classes of separators were well known, are cognate in character, and milk testers containing a series of bottles which were mounted upon a common frame and rotated around a common axis were familiar before the date of the original of the Sharples reissued patent. The patents to Gustaf De Laval and to George W. Tower, Jr.,—Nos. 365,120 and 431,128, respectively,—are illustrative of this class of separators. The defendants' machine has a whirling bottle-holding frame upon which is mounted a series of small milk-testing bottles. The frame is "suspended upon a fixed bearing in the perpendicular of the center of gravity of the load through which a nozzle takes a jet of steam against buckets on the periphery of the rotary apparatus," whereby the series of bottles is simultaneously whirled and heated by the operating jet of steam. The subdivision of one separator vessel into a theretofore well-known series of vessels which assume a radial position when the rotating apparatus is in motion is not of importance upon the question of infringement of claims 4 and 5 of the reissue. The defendants have applied the distinctive features of the plaintiffs' separating machine to their rotary milk-testing apparatus. Letters patent No. 458,194 describe a milk-testing apparatus, and the third claim is as follows:

"(3) In a milk-testing apparatus, the combination, with a rotary frame having independently hinged pockets to receive the testing vessels, of an annular casing, F, fixed to said frame outside of said pockets, and a steam nozzle located in close proximity to the exterior of said casing, the space surrounding said pockets being in communication with the outside of said casing, whereby the contents of the vessel are heated by the operating steam, substantially as set forth."

This machine was an improvement upon reissued patent No. 11,311. It had the familiar rotary frame with independently hinged pockets for the testing bottles, but the distinctive feature of claim 3 was the annular casing fixed to the frame outside the pockets against which the nozzle delivered the jet, and which was also designed to aid in concentrating the steam in the vicinity of the bottles. The casing had two walls,—one a top wall or flange extending inwardly, and the other a peripheral wall having buckets on the exterior, and preferably having openings through it,—and was intended to partially inclose, and not merely to surround, the pockets. The jet of steam impinged upon the exterior buckets. Milk-testing machines are usually used with an outside stationary metallic casing, which covers the whole whirling apparatus when in motion, and which retains and confines within itself and in the vicinity of the bottles the steam which is emitted from the nozzle. The complainants suppose that, although this exterior casing is not mentioned in the specification, and is not shown in the drawings, it is by implication a part of the structure, because it is an ordinary part of milk-testing apparatus. But the specification says that "figure 1 is a sectional elevation of the com-

plete apparatus," and, furthermore, a described object of the annular casing with the openings in its peripheral wall is to keep the vessels in an atmosphere of steam. The specification says that the contents of the vessel are maintained during the rotation "at a high temperature by the same steam which effects the rotation, and which enters the casing, F, and keeps the vessels in an atmosphere of exhaust steam. Openings, $f^3$, shown in the wall, $f^1$, may be provided to insure the entrance of steam within the casing." It is difficult to understand the importance of this casing unless it was intended that the machine with its improvement was complete and efficient without the addition of a heavy exterior cover. The defendants' machine is made in accordance with letters patent No. 484,685, issued to Ralph Stoddard on October 18, 1892, for slight improvements in milk-testing apparatus. It has the old exterior cover, which covers a whirling apparatus provided with testing bottles. To the outer ends of radial arms is secured a rim, the outer periphery of which is provided with buckets against which the jet of steam strikes. The theory of the complainants is that this rim is the annular casing of claim 3 of No. 458,194. It is not that casing with its two walls inclosing the pockets, and designed to keep the steam in contact with the bottles, but is simply the rim of a rotating frame which receives the propelling force of the steam, which is kept in close contact with the bottles by the exterior cover. It is too great an expansion of the narrow improvement of claim 3 to construe it so as to include a mere rim, which does not retain the steam in the vicinity of the bottles. The decree of the circuit court is directed to be modified, with costs of this court, so as to decree that claim 3 of letters patent No. 458,194 was not infringed, and modifying accordingly the decree in regard to an injunction and an accounting with respect to that claim.